UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL JOHN HUTCHINS,

                    Plaintiff,                    Case No. 2:23-cv-13224

v.                                                Honorable Susan K. DeClercq
                                                  United States District Judge
BROCK SIMMONS, et al.,

                    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON THE BASIS OF
EXHAUSTION (ECF No. 15), DISMISSING WITHOUT PREJUDICE
DEFENDANTS HUGHES AND SANBORN, AND DENYING AS MOOT
DEFENDANTS' MOTION TO STAY DISCOVERY (ECF No. 41)**

Plaintiff Daniel John Hutchins alleges that seven Michigan Department of

Corrections officers working at Parnell Correctional Facility (PCF) violated

Hutchins's constitutional rights through a series of retaliatory actions between

March and July 2023, which included issuing Hutchins a meritless misconduct

ticket, placing Hutchins in segregation without due process, and improperly raising

Hutchins's security level.

Defendants now seek partial summary judgment, arguing that almost all of

Hutchins's claims should be dismissed for failure to exhaust administrative

remedies. Defendants argue that only a very narrow handful of claims against three

Defendants should be allowed to proceed.

As explained below, Defendants' Motion will be granted in part to the extent that two Defendants will be dismissed without prejudice and Hutchins's legal claims will be narrowed in factual scope.

## I. BACKGROUND

Between January 6 and July 21, 2023, Plaintiff Daniel John Hutchins was incarcerated at PCF in Jackson, Michigan. ECF No. 1 at PageID.4. During this time, Plaintiff filed several complaints and grievances about PCF staff. *Id.* According to Plaintiff, over a four-month period, seven PCF employees threatened Plaintiff and retaliated against Plaintiff because of Plaintiff's complaints and grievances. *See id.* at PageID.5–17.

### A. Alleged Threats Made Against Plaintiff

Plaintiff first alleges that on March 13, 2023, Defendant Brock Simmons, an inspector at PCF, threatened Plaintiff by saying that Plaintiff was "being noticed around here" for the complaints and grievances that had been filed. *Id.* at PageID.5.

Plaintiff next alleges that in April 2023, another prisoner "verbally and sexually harassed" Plaintiff and Plaintiff reported it to Defendant Simmons and the PCF counselor. *Id.* The other prisoner was then moved to another housing unit, but a few weeks later, that prisoner "threatened Plaintiff with a homemade weapon." *Id.* Defendant Cody Crites, a lieutenant at PCF, was notified of the incident, but Plaintiff alleges Crites did not do anything and instead referred to a grievance that Plaintiff

- 2 -

had previously filed and told Plaintiff that he "wish[ed] the [other prisoner] had shut [Plaintiff's] fucking mouth perm[a]nently." *Id.* at PageID.5–6. Dissatisfied with Defendant Crites's handling of the incident, Plaintiff then complained about him to PCF's Assistant Deputy Warden, Defendant Caitlin McGinn. *Id.* at PageID.6. Defendant McGinn told Plaintiff she would talk to Defendant Crites but advised Plaintiff to "[s]top making [waves], and causing so much bad blood." *Id.*

In May 2023, Plaintiff alleges that Defendant Crites discovered that Plaintiff had complained to Defendant McGinn about him and threatened to raise Plaintiff's security level in retaliation for Plaintiff's complaints. *Id.* Plaintiff verbally complained about Crites, and Defendant McGinn and Defendant Hughes allegedly investigated the incident. *Id.* at PageID.7. But Plaintiff alleges that Defendant Hughes threatened Plaintiff by telling Plaintiff to "be careful" about who Plaintiff complains about. *Id.* Plaintiff also alleges Defendant McGinn told Plaintiff she hoped "they" got rid of Plaintiff. *Id.*

In addition to Plaintiff's verbal complaint about Crites, Plaintiff also filed a formal Step I Grievance on May 25, 2023, which named Defendants Crites, Simmons, Nagy, and several other PCF staff who are not parties to this case. *See* ECF No. 15-3 at PageID.139. In the Step I Grievance, Plaintiff alleged Defendant Crites did not do anything to investigate the April sexual harassment incident and that Defendant Crites threatened Plaintiff by saying he "would have his officers

'shoot' [Plaintiff] to Level IV" security because of Plaintiff's complaints. *Id.* After receiving Plaintiff's Step I Grievance, PCF Staff opened an "administrative investigation" regarding "[t]he issue of prisoner on prisoner sexual harassment" which Plaintiff raised in the grievance. *Id.* Accordingly, MDOC marked the grievance as "RESOLVED" sometime in June 2023. *Id.* Notably, however, the Step I grievance form has a spot for the grievant's signature if the grievance is resolved. *See id.* Plaintiff's signature does not appear on the form. *Id.* Indeed, Plaintiff appealed the Step I grievance decision to Step II and Step III, but the MDOC "upheld" the Step I response, *id.* at PageID.138, and denied Plaintiff's appeal, *id.* at PageID.136.

**B. Alleged Retaliation Against Plaintiff**

In late June 2023, Defendant Willard Murrell, a corrections officer at PCF, caught Plaintiff "engaging in sexual behavior" with another prisoner. ECF No. 1 at PageID.8. Plaintiff claimed the sexual behavior was consensual, but the other prisoner claimed it was not and that Plaintiff had assaulted him. *Id.* Plaintiff alleges that Defendant Murrell told Plaintiff that although he knew Plaintiff was in "a sexual relationship" with the other prisoner, Plaintiff had really "pissed off the brass, and it looks like they are going to let [the other prisoner] go and fry [Plaintiff's] ass!" *Id.* at PageID.9. Plaintiff was placed in segregation shortly thereafter. *Id.* Plaintiff complained about being placed in segregation without notice or due process, and

also complained that an electronic tablet belonging to him had been stolen. *Id.* Indeed, Plaintiff filed a grievance about both issues on July 2 and July 4, 2023, but both grievances were rejected. *See* ECF No. 15-3 at PageID.116–120, 131–134. Plaintiff's July 2, 2023, Step I Grievance regarding his placement in segregation was rejected for containing multiple unrelated issues, because it mentioned both being placed in segregation *and* being forced to shower with men. *Id.* at PageID.117–20. Plaintiff's July 4, 2023, Step I Grievance, which alleged that Defendant Murrell and Defendant Simmons refused to recover Plaintiff's tablet in retaliation for Plaintiff's prior grievances, was rejected because Plaintiff failed to first attempt to resolve the issue with appropriate staff. *Id.* at PageID.134.

On July 5, 2023, Defendants issued a Class I misconduct ticket to Plaintiff for sexual assault related to the June 2023 incident. ECF No. 1 at PageID.10. The misconduct hearing was scheduled for July 13, 2023. *Id.*

Five days later, Plaintiff was placed on "modified" grievance access status. *See* ECF Nos. 18 at PageID.171, 185; 22 at PageID.226. MDOC Policy Directive 03.02.130 permits MDOC wardens or FOA Region Managers to place prisoners who "file[] an excessive number of grievances (three within a 30 calendar day span) that are rejected" on modified grievance access. ECF No. 15-2 at PageID.108. However, while a prisoner is on modified grievance access, that prisoner may still request a Step I grievance form from the prison's grievance coordinator. *Id.* at PageID.109. If

the grievance coordinator reviews the prisoner's request and finds that the issue is "grievable and otherwise meets the criteria outlined in" PD 03.02.130, then the grievance coordinator will provide a grievance form to the prisoner. *Id.* If the issue is not grievable or does not meet the necessary grievance criteria, the grievance coordinator will deny the prisoner's request for a Step I grievance form. *Id.*

During the time Plaintiff was on modified grievance access status, Plaintiff requested six Step I grievance forms. *See* ECF No. 28-1 at PageID.258, 262. All of Plaintiff's requests were denied on July 13 and July 19, 2023. *See* ECF No. 18 at PageID.186–90.

On July 13, 2023, a hearing on the misconduct ticket was held. *See* ECF No. 15-4 at PageID.156. The administrative law judge dismissed the ticket on procedural grounds because the hearing was held beyond seven days after Plaintiff was confined in segregation on June 29, 2023. *Id.* at PageID.157. The administrative law judge additionally noted that even if the misconduct ticket were not dismissed for procedural reasons, it would likely be dismissed on the merits, as the "evidence presented in this record indicates that [Hutchins and the other prisoner] were likely taking part in sexual contact that was consensual," and it appeared the other prisoner only claimed it was an assault to avoid getting in trouble. *Id.* at PageID.158.

In the days that followed, Plaintiff alleges Defendant Murrell "confiscated 24 pages" of Plaintiff's legal documents, including documents from the July 13, 2023,

misconduct hearing. ECF No. 1 at PageID.11. Plaintiff alleges that after his documents were confiscated, Defendants Crites and Murrell told Plaintiff that the legal documents would be thrown away and that Plaintiff would not receive a hearing on the issue and would be prevented from attempting to file a lawsuit against them for it. *Id.* at PageID.12. Plaintiff attempted to file a complaint about this incident, but Defendant Simmons informed Plaintiff that PCF was "no longer accepting [Plaintiff's] complaints." *Id.*

On July 18, 2023, Plaintiff was again placed in segregation[1] and PCF staff issued a notice of intent to reclassify Plaintiff to be placed in "top Administrative Segregation." *Id.* at PageID.13. The notice was reviewed, but Plaintiff could not properly hear what was happening during the review process. *Id.* Plaintiff alleges that two days later, Defendant Crites and Murrell told him that Plaintiff's reclassification was the only way to get Plaintiff out of PCF. *Id.* On July 21, 2023, Plaintiff was transferred from PCF to a higher-level security facility and placed in administrative segregation. *Id.* at PageID.13–14. Two months later, Plaintiff was released from segregation at his new correctional facility. *Id.* at PageID.14.

### C. Procedural History

On December 15, 2023, Plaintiff sued the seven MDOC employees involved

---

[1] It is not clear from Plaintiff's Complaint why MDOC placed Plaintiff in segregation on July 18, 2023.

in the events he alleged occurred during his time at PCF, alleging under 42 U.S.C.

§ 1983 violations of his First, Eighth, and Fourteenth Amendment rights. ECF No.

1 at PageID.15–17.

Three months later—before any discovery had occurred—Defendants filed a

motion for partial summary judgment seeking dismissal of all but three defendants[2]

on the basis of exhaustion.[3] *See* ECF Nos. 15; 22. Defendants argue that although

Plaintiff filed several grievances during his time at PCF, he only exhausted his

claims as related to *one* grievance, so any claims relating to unexhausted grievances

should be dismissed. ECF No. 15; 22. Plaintiff opposes Defendants' Motion, arguing

that he did exhaust his administrative remedies related to the claims in his complaint.

ECF No. 18.

On January 29, 2025, Defendants filed a motion to stay discovery until a

decision was made on their motion for summary judgment. ECF No. 41. Having

rendered this Opinion and Order addressing Defendants' motion for summary

---

[2] Although Defendants' Motion first sought dismissal of all but *one* Defendant, *see* ECF No. 15 at PageID.98, Defendants conceded in their reply that "[u]pon further examination," it did appear from the grievance forms that Plaintiff exhausted claims against three defendants, ECF No. 22 at PageID.224.

[3] Notably, Defendants' Motion for Summary Judgment does not at all address Plaintiff's claims that Defendants Crites, Murrell, and McGinn coordinated to increase Plaintiff's security level on July 20, 2023, in retaliation for Plaintiff's Complaints. *See generally* ECF No. 15; *see also* ECF No. 1 at PageID.13. Accordingly, Plaintiff's claims against those Defendants related to those factual allegations will not be dismissed.

judgment, Defendants' motion to stay discovery will now be denied as moot.

## II. LEGAL STANDARDS

### A. Summary Judgment

To prevail on summary judgment, movants must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a). If the movant makes such a showing, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than a mere "scintilla of evidence," *id.* at 251, and more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *See Anderson*, 477 U.S. at 251–52.

### B. Exhaustion under the Prison Litigation Reform Act

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions or treatments. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88–90, 93 (2006). This exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). But an inmate need only exhaust those remedies that are actually "available" to him. *Ross v. Blake*, 578 U.S. 632, 643 (2016). To that end, if an administrative remedy "is not capable of use to obtain relief," then § 1997e may not bar suit. *Id.*

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 637, 677 (6th Cir. 2015) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "But a prisoner countering a motion alleging failure to exhaust must offer competent and specific evidence showing that he indeed exhausted his remedies or was otherwise excused from doing so." *Parks v. Mich. Dep't of Corr.*, No. 2:20-cv-11673, 2021 WL 3533422, at *3 (E.D. Mich. May 17, 2021), *adopted*, 2021 WL 2820984 (E.D. Mich. July 7, 2021) (cleaned up).

Summary judgment based on a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

## III. ANALYSIS

### A. Exhaustion of Plaintiff's Claims About a Retaliatory Misconduct Ticket

Plaintiff alleges that PCF staff issued a Class I misconduct ticket to Plaintiff in retaliation for Plaintiff's earlier grievances and complaints. *See* ECF No. 1 at

PageID.10 (alleging that Hughes issued the misconduct ticket because "Defendants Simmons, Crites, McGinn, and Murrell asked Hughes to 'hook-up' the misconduct [ticket] and fry the Plaintiff.").

## 1. Exhaustion requirements

Decisions made through MDOC's misconduct hearing process are not grievable. *Siggers v. Campbell*, 652 F.3d 681, 693–94 (6th Cir. 2011). Instead, prisoners must exhaust and challenge misconduct tickets through a hearing, a rehearing, or an appeal of the decision made at the hearing. *Id.* at 694; *see also* ECF No. 15-2 at PageID.103 (describing the misconduct hearing and appeal process available to prisoners).

Specific allegations that a misconduct ticket was issued in retaliation against a prisoner must be raised at the misconduct hearing for the ticket. *Siggers*, 652 F.3d at 694; *see also Parker v. Gainer*, No. 1:16-cv-1302, 2018 WL 1578388, at *2 (W.D. Mich. Apr. 2, 2018). If a prisoner does not state at the misconduct hearing that he or she believes the issuance of the ticket was retaliatory, "any avenue to challenge the misconduct ticket is foreclosed and [that prisoner] has failed to exhaust administrative remedies." *Parker v. Turner*, No. 20-12794, 2022 WL 722192, at *3 (E.D. Mich. Mar. 9, 2022) (citing *Siggers*, 652 F.3d at 693).

## 2. Analysis

Plaintiff's misconduct hearing occurred on July 13, 2023. *See* ECF No. 15-4 at PageID.156. Importantly—and dispositively—there is no evidence that Plaintiff alleged during the hearing that the misconduct ticket was issued in retaliation for Plaintiff's grievances and complaints. Indeed, a review of Plaintiff's July 2023 statement, which Plaintiff prepared for the hearing, reflects that Plaintiff offered myriad reasons why the misconduct ticket should be dismissed. *See generally* ECF No. 15-5. Not once, however, does Plaintiff assert that the ticket should be dismissed because it was retaliatory. *See id.* Nor does the Administrative Law Judge's hearing report reflect that Plaintiff raised the issue of retaliation at the July 13 hearing. *See* ECF No. 15-4 at PageID.156–58.

In sum, because Plaintiff did not allege at the July 11 misconduct hearing that the issuance of the misconduct ticket was retaliatory, Plaintiff failed to exhaust the relevant administrative remedies. Thus, any of Plaintiff's legal claims arising from the allegations that PCF staff issued a misconduct ticket in retaliation for Plaintiff's grievances and complaint must be dismissed.

### B. Exhaustion of Plaintiff's Claims About Grievable Issues

Plaintiff's remaining claims against Defendants are all related to grievable issues. To satisfy the PLRA's exhaustion requirement for a grievable issue, an inmate must strictly comply with the grievance process provided by the prison. *Woodford*, 548 U.S. at 93–94.

- 12 -

## 1. MDOC's Grievance Policy

Under MDOC's grievance policy in effect while Plaintiff was incarcerated at PCF,[4] a Michigan prisoner must timely proceed through a three-step grievance process to exhaust his administrative remedies. *See* MDOC Policy Directive No. 03.02.130 (eff. Mar. 18, 2019*, amended* Sept. 25, 2023); ECF No. 15-2 at PageID.102–109.

At Step I, a prisoner must "attempt to resolve the issue with the staff member involved within two business days" and, if unsuccessful, file a grievance within five business days. ECF No. 15-2 at PageID.105. At Step II, a prisoner may appeal the denial of the grievance within ten business days of receipt to the Step II Grievance Coordinator, who will assign an appropriate respondent. *Id.* at PageID.107. At Step III, a prisoner may appeal the Step II response within ten business days of receipt to MDOC's Grievance Section. *Id.* at PageID.108.

## 2. Analysis

At the outset, a brief summary of Plaintiff's relevant grievances that were pursued through Step III is useful:

| Step I Grievance | Grievance | Defendants named in | Substance of Step I Grievance | Outcome of Grievance |
| --- | --- | --- | --- | --- |

---

[4] Although a newer version of MDOC PD 03.02.130 became effective September 25, 2023, Plaintiff's Complaint contemplates only events that occurred between January and July 2023, before the newer version of PD 03.02.130 became effective.

| Date | Number[5] | Step I Grievance[6] | | |
|---|---|---|---|---|
| May 25, 2023 | 629 | Crites, Simmons, Nagy | Alleges that Crites did not do anything after Plaintiff reported sexual harassment in April and that on May 21, Crites threatened Plaintiff by telling Plaintiff that Crites "would have his officers 'shoot'" Plaintiff's security level up if Plaintiff did not stop filing complaints. ECF No. 15-3 at PageID.139. | Designated as **resolved** by MDOC staff. Plaintiff appealed through both Step II and Step III, arguing his complaint was not actually resolved, but MDOC denied Plaintiff's appeals. *See* ECF No. 15-3 at PageID.135–39. |
| July 2, 2023 | 792 | Nagy | Alleges that Nagy and other PCF staff violated MDOC policy by placing Plaintiff in segregation on June 29, 2023, without notice and without the issuance of a misconduct ticket. Also alleges improper housing conditions and alleges PCF staff are forcing Plaintiff to shower with men in violation of Plaintiff's "medical detail." ECF No. 15-3 at PageID.119. | **Rejected July 20, 2023,** at Step I for containing multiple unrelated issues. ECF No. 15-3 at PageID.119. Plaintiff appealed through both Step II and Step III, but MDOC denied Plaintiff's appeals. *See id.* at PageID.116–18. |
| July 4, 2023 | 795 | Simmons | Alleges that Simmons denied Plaintiff access to courts by placing Plaintiff in segregation on June 29, 2023, and not allowing Plaintiff to utilize law library on June 30, 2023, and July 3, 2023. ECF No. 15-3 at PageID.124. | **Rejected July 20, 2023,** for raising issues that were duplicative of issues raised in another grievance. ECF No. 15-3 at PageID.125. Plaintiff appealed through Step II and Step III arguing it was not |

---

[5] Only the three terminal digits of the grievance number are listed in this table.

[6] Several grievances include the names of other PCF staff who are not defendants in this case. *See generally* ECF No. 15-3. Because they are not relevant to the exhaustion analysis, they are not included in the chart.

- 14 -

| | | | | duplicate, but MDOC denied Plaintiff's appeals. *See id.* at PageID.121–23. |
|---|---|---|---|---|
| July 4, 2023 | 797 | Simmons, Murrell | Alleges that Simmons placed Plaintiff in segregation on June 29, 2023, without due process and that Murrell and Simmons refused to recover Plaintiff's stolen tablet in retaliation for Plaintiff's grievances. ECF No. 15-3 at PageID.134. | **Rejected July 20, 2023,** for failure to attempt to resolve the issue with appropriate staff before filing the grievance. ECF No. 15-3 at PageID.134. Plaintiff appealed through Step II and Step III, but MDOC denied Plaintiff's appeals. *See id.* at PageID.131–33. |
| July 6, 2023 | 796 | Simmons | Alleges Simmons placed Plaintiff in segregation on June 29, 2023, without notice and without the issuance of a misconduct ticket and forced Plaintiff to shower with other men in violation of Plaintiff's medical detail. ECF No. 15-3 at PageID.129. | **Rejected July 20, 2023,** for being duplicative of Plaintiff's July 2, 2023, grievance which raised the same issue. ECF No. 15-3 at PageID.129. Plaintiff appealed the rejection through Step II and Step III, but MDOC denied Plaintiff's appeals. *See id.* at PageID.126–28. |

*See* ECF No. 15-3 at PageID.116–54.

## i. Plaintiff's Legal Claims Against Defendants Hughes, McGinn, and Sanborn

- 15 -

First, Defendants seek dismissal of Defendants Hughes, McGinn, and Sanborn, arguing that Plaintiff has not exhausted the administrative process regarding any legal claims against those Defendants. ECF No. 15 at PageID.97–98.

Importantly, as demonstrated in the table above, no relevant grievance filed between March 2023 and July 18, 2023, includes Defendants Hughes, McGinn, and Sanborn. *See* ECF No. 15-3 at PageID.116–54. And there were no requests for grievance forms relating to Plaintiff's legal claims against these Defendants while Plaintiff was on modified grievance access. *See* ECF No. 28-1 at PageID.258, 262. Thus, Plaintiff did not exhaust administrative remedies against these Defendants. *See, e.g.*, *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("Under the Department of Corrections' procedural rules, inmates must include the . . . [']names of all those involved in the issue being grieved' in their initial grievance."); *Green v. Douglas*, No. 22-10101, 2022 WL 3215004, at *3 (E.D. Mich. Aug. 9, 2022) (granting summary judgment in favor of defendant who was not named in Step I grievance).

Accordingly, Defendant Hughes and Defendant Sanborn will be dismissed without prejudice from this case. And all claims against Defendant McGinn through July 18, 2023, will be dismissed without prejudice. But, as noted earlier, because Defendants' motion for summary judgment is silent as to Plaintiff's claim that on July 20, 2023, Defendant McGinn directed or approved the increase in Plaintiff's

security level in retaliation for Plaintiff's complaints, that sole claim will remain against Defendant McGinn.

### ii. Plaintiff's Legal Claims Against Defendant Murrell

Defendants also seek dismissal of Defendant Murrell, arguing that Plaintiff did not exhaust the administrative process regarding any allegations against Defendant Murrell. ECF No. 15 at PageID.96–98.

Defendants are correct that it appears only one of Plaintiff's grievances pursued through Step III includes Murrell: Grievance 797, filed on July 4, 2023, which alleges that MDOC staff allowed an inmate to steal Plaintiff's tablet and then did nothing to help Plaintiff retrieve it. *See* ECF No. 15-3 at PageID.134. That grievance was rejected for Plaintiff's failure to first attempt to resolve the issue with the staff member involved in the issue, as required under MDOC PD 03.02.130. ECF No. 15-3 at PageID.134–35; *see also* ECF No. 15-2 at PageID.105. Defendants argue that because Grievance 797 was rejected for a reason explicitly set forth in MDOC PD 03.02.130, MDOC's rejection of the grievance was not on the merits, and thus Plaintiff has not exhausted administrative remedies, despite having appealed the rejection through Steps II and III. ECF No. 15 at PageID.96.

Plaintiff responds that MDOC's rejection of Grievance 797 was improper because Plaintiff "spoke directly to [Taylor] and [McDaniels]" to try to resolve the issue. *See* ECF No. 15-3 at PageID.132; ECF No. 18 at PageID.174. Plaintiff further

- 17 -

asserts that because Plaintiff was in a segregation cell, certain PCF staff were not "available to" Plaintiff, so Plaintiff contacted the only *available* MDOC staff— Taylor and McDaniel—who then "contacted both Defendants Brock Simmons and Willard Murrell regarding" the issue. ECF No. 18 at PageID.174. But this detail is not included in Grievance 797. *See* ECF No. 15-3 at PageID.134. Indeed, Grievance 797 states only that, in attempts to resolve the issue prior to filing the Step I Grievance, Plaintiff "spoke to [Lobliner] and [Taylor]" and that Plaintiff "sent kites to [Taylor] and [McDaniels]." *Id.*

Because Plaintiff has not once asserted that he *tried* to contact Murrell, Plaintiff's claims against Murrell in Grievance 797 has not been exhausted. Indeed, as the Sixth Circuit has noted, "the only way [for a prisoner] to determine if [an administrative] process [is] available, or futile, [is] to try." *Napier v. Laurel Cnty.*, 636 F.3d 218, 224 (6th Cir. 2011). Accordingly, Plaintiff has not shown that the administrative process was unavailable to him, and MDOC's rejection of Grievance 797 for Plaintiff's failure to attempt to resolve the issue with the appropriate staff was proper. And because the rejection was not on the merits, Plaintiff's claims against Murrell related to the stolen tablet are not exhausted and must be dismissed without prejudice.

Plaintiff's remaining claims against Defendant Murrell occurred between July 10 and July 20, when Plaintiff was on modified grievance access status. *See* ECF

No. 1 at PageID.10–13. Thus, a brief additional inquiry is necessary. Specifically, Plaintiff has alleged that Defendant Murrell (1) confiscated 24 pages of Plaintiff's legal documents on July 15, 2023; (2) was involved in placing Plaintiff in segregation on July 18, 2023, after Plaintiff was found not guilty for the misconduct ticket; and (3) was involved in raising Plaintiff's security level on July 20, 2023, in retaliation for Plaintiff's complaints. *See* ECF No. 1 at PageID.11–13.

While on modified grievance access, a prisoner may not *file* grievance forms but may *request* forms from the grievance administrator after explaining what they intend to grieve. *See* ECF No. 15-2 at PageID.108–09.

Having reviewed the six requests for grievance forms Plaintiff submitted between July 10 and July 18, 2023, *see* ECF No. 28-1 at PageID.258, 262, Plaintiff did not request a grievance form regarding any legal documents that were confiscated on July 15, 2023. Thus, any claims against Murrell related to this issue are unexhausted and will be dismissed without prejudice. And although Plaintiff made a request for a grievance form to grieve some MDOC staff regarding Plaintiff's placement in segregation without notice on July 18, 2023, that request did not allege Murrell's involvement. *See* ECF No. 28-1 at PageID.262. Thus, these claims too are unexhausted and will be dismissed without prejudice.

But, as noted earlier, Plaintiff's claim against Defendant Murrell related to the allegation that Defendant Murrell was involved in raising Plaintiff's security level

on July 20, 2023, will not be dismissed at this time because Defendants did not analyze this claim in their motion for summary judgment. *See* ECF No. 15.

In sum, Plaintiff did not exhaust administrative remedies related to claims against Murrell through July 18, 2023. So, all but one claim against Defendant Murrell will be dismissed without prejudice. The only remaining claim against Defendant Murrell is Plaintiff's claim that Defendant Murrell retaliated against Plaintiff for Plaintiff's complaints by seeking to increase Plaintiff's security level. *See* ECF No. 1 at PageID.13.

### iii. Plaintiff's Legal Claims Against Defendants Crites, Nagy, and Simmons

Defendants next argue that the only claims that should proceed against the remaining Defendants—Defendants Crites, Nagy, and Simmons—are claims related to allegations in Grievance 629, which Plaintiff filed on May 25, 2023. ECF No. 15 at PageID.92, 95. All other claims against Defendants Crites, Nagy, and Simmons, Defendants argue, are unexhausted and should be dismissed as such. *Id.* at PageID.97–98.

Grievance 629 states that Defendants Crites, Nagy, and Simmons failed to investigate Plaintiff's complaint of sexual harassment and that Defendant Crites threatened to upgrade Plaintiff's security level if Plaintiff did not stop filing grievances. ECF No. 15-3 at PageID.139. After reviewing Grievance 629, MDOC staff designated it as "resolved," noting that MDOC had opened an "administrative

investigation" regarding the prisoner sexual harassment. *Id.* But Plaintiff's signature does not appear on Grievance 629 acknowledging its purported resolution. *See id.* To the contrary, Plaintiff appealed the purported "resolution" of Grievance 629 through Steps II and III, arguing it was not actually resolved. *See id.* at PageID.136–37. But MDOC denied Plaintiff's appeals. *Id.* at PageID.135–37.

Importantly, Defendants admit that Plaintiff's claims against Defendants Crites, Nagy, and Simmons which were articulated in Grievance 629 were exhausted and should not be dismissed at this stage. *See* ECF No. 22 at PageID.226. Thus, this Court need only address Defendants' arguments that all other allegations against Defendants Crites, Nagy, and Simmons are unexhausted and should be dismissed without prejudice. All of these allegations are discussed below.

### a. Plaintiff's Claims Against Defendant Crites

In addition to alleging Crites threatened to raise Plaintiff's security level in retaliation for Plaintiff's grievances, Plaintiff's Complaint includes three more grievable allegations against Defendant Crites: (1) that Defendant Crites placed Plaintiff in segregation without notice or due process; (2) that Defendant Crites urged Defendant Simmons to confiscate Plaintiff's legal documents on July 15, 2023; and (3) Defendant Crites placed Plaintiff in segregation after Plaintiff was found not guilty of the misconduct-ticket charges. *See* ECF No. 1.

Plaintiff's first allegation against Crites will be dismissed because although

Plaintiff filed several Step I grievances relating to being placed in segregation without notice or due process on June 29, 2023, Defendant Crites was not mentioned in *any* of those grievances. *See* ECF No. 15-3 at PageID.119, 124, 129, 134. Accordingly, any legal claims against Crites relating to these factual allegations will be dismissed without prejudice. *See Green v. Douglas*, No. 22-10101, 2022 WL 3215004, at *3 (E.D. Mich. Aug. 9, 2022) (granting summary judgment in favor of defendant who was not named in Step I grievance).

Turning to Plaintiff's second and third allegations against Defendant Crites, these events occurred *after* Plaintiff was placed on modified grievance access. *See* ECF No. 18 at PageID.185. Having reviewed the six requests for grievance forms Plaintiff submitted between July 10 and July 18, 2023, *see* ECF No. 28-1 at PageID.258, 262, Plaintiff did not request a grievance form regarding any confiscation of legal documents on July 15, 2023. Thus, any claims against Crites related to this issue are unexhausted and will be dismissed without prejudice. And although Plaintiff requested a grievance form to grieve some MDOC staff regarding Plaintiff's placement in segregation without notice on July 18, 2023, that request did not allege Crites's involvement. *See* ECF No. 28-1 at PageID.262. Thus, these claims too are unexhausted and will be dismissed without prejudice as to Defendant Crites.

### b. Plaintiff's Claims Against Defendant Nagy

In addition to alleging that Defendant Nagy failed to investigate Plaintiff's report of sexual assault in April 2023, Plaintiff's Complaint includes two additional allegations against Defendant Nagy: (1) that Defendant Nagy refused to help Plaintiff retrieve Plaintiff's stolen tablet; and (2) that Defendant Nagy placed Plaintiff in segregation without notice or due process. *See* ECF No. 1.

As to the first allegation about the stolen tablet, Plaintiff did not exhaust Plaintiff's administrative remedies. In reviewing Grievance 797, Plaintiff's Step I grievance regarding the stolen tablet, Defendant Nagy is not named anywhere in the grievance. *See* ECF No. 15-3 at PageID.134. Accordingly, any legal claims against Nagy arising from these facts will be dismissed.

As to the second allegation regarding Plaintiff's placement in segregation without due process, Plaintiff has not exhausted administrative remedies on this issue, either. Although Plaintiff filed four grievances mentioning his placement in segregation on June 29, 2023, only Grievance 792, filed on July 2, 2023, names Defendant Nagy. *See* ECF No. 15-3 at PageID.119. But Grievance 792 was rejected for being unclear and containing multiple grievable issues. *Id.* Although Plaintiff appealed that rejection through Step III, MODC denied Plaintiff's appeals and upheld the rejection. And that rejection does not appear improper, as Grievance 792 does indeed raise two issues: Plaintiff's placement in segregation on June 29, 2023, *and* the lack of available hygiene conditions for Plaintiff. *See id.* Thus, any claims

against Defendant Nagy relating to Plaintiff's alleged placement in segregation on June 29, 2023, must be dismissed without prejudice for lack of exhaustion.

### c. Plaintiff's Claims Against Defendant Simmons

In addition to alleging that Defendant Simmons failed to investigate Plaintiff's report of sexual assault in April 2023, Plaintiff's Complaint includes four additional grievable allegations against Defendant Simmons: (1) that Defendant Simmons threatened Plaintiff for Plaintiff's grievances on March 13, 2023; (2) that Defendant Simmons refused to help Plaintiff retrieve Plaintiff's stolen tablet; (3) that Defendant Simmons placed Plaintiff in Segregation without due process; (4) that Defendant Simmons threatened Plaintiff and returned Plaintiff's tablet damaged on July 14, 2023. *See* ECF No. 1.

Beginning with Plaintiff's first allegation about the March 2023 threat, Plaintiff did not file a grievance that was appealed through Step III regarding such a threat. *See generally* ECF No. 15-3 at PageID.111–15. So any legal claim against Defendant Simmons arising from that fact will be dismissed without prejudice.

As to Plaintiff's second allegation about the stolen tablet, Plaintiff filed Grievance 797 about that issue. *See* ECF No. 15-3 at PageID.134. But Grievance 797 was rejected because Plaintiff did not attempt to first resolve it with the appropriate MDOC staff involved in the issue. *See id.* For the same reasons explained in Section A relating to Plaintiff's stolen-tablet claims against Defendant

- 24 -

Murrell, *see* Part III.B.2.ii, *supra*, MDOC's rejection was proper, so this issue was not resolved on the merits and thus administrative remedies are not exhausted.

As to Plaintiff's third allegation against Simmons related to Plaintiff's placement in segregation on June 29, 2023, there are two Grievances which make such an allegation: Grievance 795, *see* ECF No. 15-3 at PageID.124 ("I was placed in segregation by Brock Simmons on 6-29-23, with no ticket or NOI"), and Grievance 797, *id.* at PageID.134 ("On 6-29-23 Brock Simmons placed in me in segregation without Due Process.").

But both Grievances were rejected for failure to comply with MDOC PD 03.02.130, and neither rejection was improper. Indeed, this Court has already determined that the rejection of Grievance 797 was proper. *See* Part III.B.2.ii., *supra*. And Grievance 795 was rejected as duplicative to a complaint Plaintiff had previously filed and was pending before MDOC staff. ECF No. 15-3 at PageID.124. Thus, because any grievances against Defendant Simmons related to Plaintiff's placement in segregation on June 29, 2023, were rejected, any claims against Defendant Simmons relating to this incident must be deemed unexhausted and dismissed without prejudice.

Plaintiff's fourth allegation against Defendant Simmons is that Defendant Simmons threatened Plaintiff on July 14, 2023, and returned Plaintiff's tablet with damage. This allegedly occurred on July 14, 2023—while Plaintiff was on modified

grievance access status, which required Plaintiff to file a request for a grievance form with the grievance administrator. Having reviewed the six requests for grievance forms Plaintiff submitted between July 10 and July 18, 2023, *see* ECF No. 28-1 at PageID.258, 262, Plaintiff did not request a grievance form regarding a threat of retaliation or retaliatory destruction by Defendant Simmons. *See generally* ECF No. 28-1 at PageID.258, 262. Thus, any claims arising from these allegations are also unexhausted and will be dismissed without prejudice.

### C. Summary of Plaintiff's Remaining Claims

At this point, to summarize: Plaintiff's remaining legal claims are those related to (1) the grievable issues Plaintiff asserted in Grievance 692 against Defendants Crites, Nagy, and Simmons; and (2) Plaintiff's allegations that on July 20, 2023, Defendants Crites, Murrell, and McGinn acted to increase Plaintiff's security level in retaliation for Plaintiff's grievances and complaints.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 15, is **GRANTED IN PART** to the extent it seeks dismissal of (1) Defendants Hughes and Sanborn and (2) claims premised on allegations Plaintiff failed to exhaust through the administrative remedies. It is **DENIED IN PART** in all other respects.

Further, it is **ORDERED** that Defendants (1) Bryan Hughes and (2) Melissa

Sanborn are **DISMISSED WITHOUTE PREJUDICE**.

Further, it is **ORDERED** that Plaintiffs' legal claims premised on the following factual allegations are **DISMISSED WITHOUT PREJUDICE:**

1. Allegations that PCF staff issued a misconduct ticket in retaliation for Plaintiff's grievances and complaints;

2. Allegations against Defendant McGinn related to events that occurred through July 18, 2023;

3. Allegations against Defendant Murrell related to events that occurred through July 18, 2023;

4. Allegations that Defendant Crites placed Plaintiff in segregation without notice or due process on June 29, 2023;

5. Allegations that Defendant Crites urged Defendant Simmons to confiscate Plaintiff's legal documents on July 15, 2023;

6. Allegations that Defendant Crites placed Plaintiff in segregation after Plaintiff was found not guilty of the misconduct-ticket charges;

7. Allegations that Defendant Nagy refused to help Plaintiff retrieve Plaintiff's stolen ablet;

8. Allegations that Defendant Nagy placed Plaintiff in segregation without notice and due process on June 29, 2023;

9. Allegations that Defendant Simmons threatened Plaintiff on March 13, 2023;

10. Allegations that Defendant Simmons refused to help Plaintiff retrieve Plaintiff's stolen tablet;

11. Allegations that Defendant Simmons placed Plaintiff in segregation without notice and due process on June 29, 2023;

12. Allegations that Defendant Simmons threatened Plaintiff and

returned Plaintiff's tablet with damage on July 14, 2023.

Further, it is **ORDERED** that Defendants' Motion to Stay Discovery, ECF

No. 41, is **DENIED AS MOOT**.

**This is not a final order and does not close the above-captioned case.**


/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: March 13, 2025